IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA,

v.                                    Case No. 3:22-cr-134

TRACY LORENZO BROWN, JR.,
    Defendant.

**MEMORANDUM OPINION**

This matter is before the Court on DEFENDANT'S OBJECTION TO THE PRESENTENCE REPORT ("Objection") (ECF No. 29). For the reasons set forth below, DEFENDANT'S OBJECTION TO THE PRESENTENCE REPORT (ECF No. 29) was denied.

**BACKGROUND**

On December 16, 2022 Tracy Brown ("Brown") plead guilty to one count of Possession of a Firearm by a Convicted Felon, in violation of 18 U.S.C. § 922(g)(1), a Class C Felony and one count of Possession with the Intent to Distribute 5 Grams or More of Methamphetamine, a Mixture and Substance Containing a Detectable Amount of Fentanyl, a Mixture and Substance Containing a Detectable Amount of Cocaine Hydrochloride, and a Mixture and Substance Containing a Detectable Amount of Cocaine Base, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B), and (b)(1)(C), a Class B Felony. The PRESENTENCE INVESTIGATION REPORT ("PSR") calculated a total Offense Level of 31 and a Criminal History Category of VI for

Brown. PSR ¶¶ 66-67 (ECF No. 27).[1] This Offense Level and Criminal History Category resulted in a Guidelines-range sentence of 188 to 235 months. Id. at 21.

In calculating the total Offense Level, the PSR included the Career Offender Enhancement, which increased the offense level from 28 to 34 (which was then reduced by three levels for acceptance of responsibility). PSR ¶ 20-21 (citing to U.S.S.G. § 4B1.1(b)(2)). In applying the Career Offender Enhancement, the PSR cited to two prior Virginia qualifying convictions. PSR ¶ 21. First, the PSR cited a 2014 conviction for Possession of Marijuana With Intent to Distribute, in violation of Va. Code Ann. § 18.2-248.1. PSR, ¶ 30. Second, the PSR cited a 2017 conviction for Possession of a Schedule I/II Controlled Substance with Intent to Distribute, in violation of Va. Code Ann. § 18.2-248(A). PSR ¶ 31.

Brown objected to the Career Offender Enhancement, arguing that neither of the cited "predicate offenses. . . qualify as a controlled substance offense, as that term is defined in U.S.S.G. § 4B1.2(b)." Objection at 1. Brown argued that, because both Virginia offenses included attempt crimes, they are not proper predicate offenses under the decision in United States v. Campbell, 22 F.4th 438 (4th Cir. 2022). Id. The Government argued that

---

[1] A second amended PSR was filed on May 15, 2023. The revisions were administrative and do not affect the substance of the Objection. SECOND PRESENTENCE INVESTIGATION REPORT at A-2 (ECF No. 51).

2

"Virginia's law is a categorical match with federal law" and, following "the paths of the United States Court of Appeals for the Sixth Circuit and Third Circuit," the Fourth Circuit did not "alter the landscape of controlled substance offenses such that a federal conviction for possession with intent to distribute or distribution offenses do not apply." UNITED STATES' RESPONSE TO DEFENDANT'S OBJECTION ("Gov. Response") at 1-2 (ECF No. 34). Therefore, according to the Government, the Virginia convictions remain proper predicate offenses under Campbell.

On March 9, 2023, the Court heard oral argument on the Objection and ordered supplemental briefing. 3/9/2023 ORDER (ECF No. 41). While supplemental briefing was underway, the Fourth Circuit issued its decision in United States v. Groves, 65 F.4th 166 (2023). The Court heard additional argument on the Objection on May 25, 2023. From the bench, the Court orally overruled the Objection. This opinion will further explain the reasoning for that decision.

## DISCUSSION

Under the Guidelines, a defendant can be charged as a Career Offender if, among other requirements, "the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1.[2] When determining

---

[2] Brown concedes that the other two requirements ("the defendant

3

if an offense is a "controlled substance offense," courts apply the categorical approach. United States v. Ward, 972 F.3rd 364, 368 (4th Cir. 2020). Under the categorical approach, "[i]f the 'least culpable' conduct criminalized by the predicate offense statute does not qualify as a 'controlled substance offense,' the prior conviction cannot support a career offender enhancement." United States v. Campbell, 22 F.4th 438, 441 (4th Cir. 2022) (quoting United States v. King, 673 F.3d 274, 278 (4th Cir. 2012)).

As Judge Wilkinson correctly observed in United States v. Graham, 67 F.4th 218, 224 (4th Cir. 2023) (Wilkinson, J. concurring), the decisions of the Supreme Court and those of the Fourth Circuit respecting the categorical approach have set precedents that "have left an incomplete whole. Worse, they run counter to the role that facts are meant to play in criminal sentencing, and they produce results that are simply inexplicable."[3] In this case, we see how the categorical approach can produce decisions that are reconcilable neither with the

---

was at least eighteen years old at the time the defendant committed the instance offense of conviction" and "the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense") have been met. U.S.S.G. § 4B1.1(a).

[3] In Graham, the categorical approach determined that carjacking is a non-violent crime despite the fact that, based on the relevant facts and commonsense (and absent the categorical approach), carjacking clearly would be a violent crime. Graham, 67 F.4th at 223-24.

4

underlying facts nor with each other. We see how this happens by assessing the decisions on which the parties rely.

In this case, the Chapter 4 Career Offender Enhancement was applied because Brown had two predicate Virginia offenses: a 2014 sentence for Possession of Marijuana With Intent to Distribute and a 2017 sentence for Possession of a Schedule I/II Controlled Substance with Intent to Distribute. PSR ¶ 21. The statute which is the basis for Brown's 2014 conviction makes it "unlawful for any person to sell, give, distribute or possess with intent to sell, give, or distribute marijuana." Va. Code Ann. § 18.2-248.1. The statute which is the basis for Brown's 2017 conviction makes it "unlawful for any person to manufacture sell, give, distribute, or possess with intent to manufacture, sell, give, or distribute a controlled substance or an imitation controlled substance." Va. Code Ann. § 18.2-248(A). The difference between the two statutes is that § 248.1 covers marijuana and § 248(A) covers all other controlled substances and their imitative forms.

For both statutes, Virginia law defines "distribute" to mean "<u>deliver</u> other than by administering or dispensing a controlled substance." Va. Code Ann. § 54.1-3401 (emphasis added). Virginia law then defines "deliver" to mean "the actual, constructive or attempted transfer of any item regulated by this chapter." <u>Id.</u>; see also <u>Moreno v. Baskerville</u>, 249 Va. 16, 18-19 (1995).

5

To resolve the objection, it is necessary to assess, and to attempt to reconcile, three decisions of the United States Court of Appeals for the Fourth Circuit.

First, there is United States v. Ward, 972 F.3d 364, 367 (4th Cir. 2020), which involved application of a career offender designation based upon two Virginia convictions under Va. Code § 18.2-248. Applying the categorical approach, the Court held that "Ward's two convictions under Va. Code § 18.2-248 categorically qualify under the ordinary meaning of 'controlled substance offense' in § 4B1.2(b) [of the sentencing Guidelines]." Id. at 374. Thus, the Fourth Circuit has already determined that Brown's 2017 offense is a controlled substance offense.

And, as to Brown's 2014 offense, the Fourth Circuit (albeit in an unpublished opinion) also determined "that the district court did not err in finding that [a] Virginia conviction for possession of marijuana with intent to distribute in violation of Va. Code Ann. § 18.2-248.1 [Brown's 2014 statute of conviction] was a controlled substance offense as defined by U.S.S.G. §§ 4B1.1, 4B1.2." United States v. Gurrant, 849 F. App'x 410, 412 (4th Cir. 2021) (unpublished). In its conclusion, the Court relied on the reasoning of Ward.

Two years after Ward, in United States v. Campbell, 22 F.4th 438 (4th Cir. 2022), the Court of Appeals had before it a West Virginia statute that made it "unlawful for any person to make

6

manufacture, deliver, or possess with intent to manufacture or deliver, a controlled substance." W.Va. Code § 60A-401(a). Once again, the issue presented was whether the statute in question provided a predicate offense for application of the Career Offender Enhancement under U.S.S.G. § 4B1.2(b). Notwithstanding that the West Virginia statute in Campbell was a virtual match for the Virginia statute at issue in Ward, the Court of Appeals, without mentioning Ward in its substantive analysis of the Career Offender issue,[4] held that the West Virginia statute did not qualify as a controlled substance offense.

In so doing, the Fourth Circuit first determined that inchoate crimes are not "controlled substance offenses." The Campbell court found that the commentary to U.S.S.G. § 4B1.2(b) included inchoate offenses under its definition of "controlled substance offenses," but, by doing so, the commentary improperly expanded the definition of the Guideline section itself, which did not contain the word "attempt." In its conclusion, the Court of Appeals noted that the First, Second, Seventh, Eighth, and Eleventh Circuits remain of the view that inchoate crimes, like attempted transfer, qualify as controlled substance offenses under U.S.S.G. § 4B1.2(b). United States v. Campbell, 22 F.4th at 443. The Court in Campbell noted,

---

[4] In Campbell, the Court did mention Ward as supplying the rule that the categorical approach should be followed. Campbell, 22 F.4th at 441.

7

however, that it was joining the D.C. Circuit, the Sixth and the Third Circuits, in finding that the commentary was "inconsistent" with "the plain text of § 4B1.2(b)" because the commentary added attempt as a controlled substance offense. United States v. Campbell, 22 F.4th at 447. And, the Fourth Circuit noted that, when the commentary is inconsistent with the Guideline, the Guideline controls. Id. Thus, because the Guideline itself did not include inchoate crimes, Campbell concluded that inchoate crimes are not "controlled substance offenses." Having made that determination, the Court of Appeals turned to the West Virginia offense in question, W. Va. Code §§ 60A-1-101(h), 60A-4-401(a), to determine whether it was an inchoate offense of attempt. Campbell, 22 F.4th at 441. And, the determination was: yes.

It is difficult to reconcile Campbell and Ward because the West Virginia statutes at issue in Campbell mirror the Virginia statutes at issue in Ward. See also infra Appendix A. Thus, the West Virginia statute makes it unlawful "for any person to manufacture, deliver, or possess with intent to manufacture or deliver a controlled substance," almost paralleling Va. Code Ann. § 18.2-248. The Virginia statute does use the word "distribute" instead of "deliver." But, of course, the Virginia statute goes on to define "distribute" to mean "deliver." Va. Code Ann. § 54.1-3401. The two statutes then define "deliver" the same: "the actual, constructive or attempted transfer." W. Va. Code § 60A-1-10(h);

8

Va. Code Ann. § 54.1-3401. If the West Virginia's statute covered inchoate crimes, it would seem that Virginia's statute, with the same wording, also would be an inchoate offense (prohibiting the "attempted" transfer of drugs). If that is so, the predicate convictions here would not be "controlled substance" offenses.

But, that result is at odds with the holding in Ward which squarely held the opposite. An attempt to reconcile Ward and Campbell is made more difficult because Campbell even cites to Ward, though on a procedural point, without questioning the validity of Ward on the controlled substance offense aspect of that holding. 22 F.4th at 441.

The analysis is further complicated because an earlier Fourth Circuit decision had concluded that W. Va. Code § 60A-4-401(a) "qualifies as a controlled substance offense." United States v. Dozier, 848 F.3d 180, 188 (4th Cir. 2017). Nonetheless, Campbell found that Dozier's holding did not prevent it from coming to the *opposite conclusion* concerning *the same statute*. Campbell justified its disregard of Dozier because "the question now before us was not at issue in that case [Dozier]." 22 F.4th at 447. It is difficult to understand that observation when Dozier and Campbell involved the same statute and the same Guideline.

Thus, as of 2022, district courts were confronted with an obvious conflict between two panel decisions from our Court of

9

Appeals, Ward and Campbell. That also was the state of things when, in this case, the Court asked the parties to address that conflict.

Then, along came United States v. Groves, 665 F.4th 166 (2023). Once again, the Court of Appeals was called upon to determine whether a drug distribution offense was a controlled substance offense. In Groves, the predicate conviction was for the federal crime of aiding and abetting "in a 21 U.S.C. § 841(a)(1) offense involving the distribution of cocaine base." Id. at 168. The statute at issue, 18 U.S.C. § 841(a)(1), makes it "unlawful for any person knowingly or intentionally . . . to . . . distribute . . . a controlled substance." Id. The term "distribute" means "to deliver (other than by administering or dispensing) a controlled substance." Id. at 172 (quoting 21 U.S.C. § 802(11)). And, the term "deliver" means the "actual, constructive or attempted transfer of a controlled substance." Id. (quoting 21 U.S.C. § 802(8)). According to the defendant, the incorporation of the term "delivery" (including "attempted transfer") means that § 841(a) criminalizes the attempt offense of attempted delivery.

The Court of Appeals rejected that argument and, instead, joined the Third, Sixth, and Eleventh Circuits in concluding that an attempted *transfer* under § 841 is not an attempted *delivery* under § 841(a)(1) and "analogous state drug distribution statutes." Groves, 65 F.4th at 172. In other words, attempted transfer under the federal statute is not an inchoate offense as

10

referred to in Campbell and thus § 841(a)(1) is a "controlled substance offense."

In Groves, the Court noted that the language of the West Virginia drug distribution statute at issue in Campbell was similar to § 841(a)(1). However, according to Groves "the West Virginia scheme-at least as it was presented in Campbell-does not criminalize attempt offenses separately from completed drug distribution offenses." 65 F.4th at 173. That renders the West Virginia scheme (at issue in Campbell) materially different from the federal scheme wherein completed drug distribution offenses are defined in 21 U.S.C. § 841(a)(1) and attempt offenses in 21 U.S.C. § 846.[5]

Applying Groves to the Virginia statutes at issue here, both of the Virginia offenses are proper predicate offenses for application of the Career Offender Enhancement because Virginia law, like federal law, provides for a separate "attempt" offense for distribution. See Va. Code Ann. § 18.2-257. Under the reasoning

---

[5] As if somewhat apprehensive about the distinction between its holding and the holding in Campbell, the Court, in Groves, noted that Groves made the argument on appeal that, under the West Virginia scheme, attempt offenses are actually criminalized separately from completed drug distribution offenses. But, the Groves court noted that "that point may bear on the proper construction of the West Virginia drug distribution statute." 65 F.4th at 174. In other words, Campbell might have been wrong but the court, in Groves, correctly noted that it had no authority to overturn the Campbell panel's work.

11

in Groves, if the Court were to construe Va. Code Ann. § 18.2-248.1 and § 18.2-248(A) as criminalizing attempt offenses, it would render Va. Code Ann. § 18.2-257 "superfluous."

Though not discussed in Groves, another possible way to distinguish the federal and Virginia offenses from those covered by West Virginia law (in Campbell) is the structure of the definitions. Federal and Virginia law define the underlying crimes in terms of "distribute." The definition of "distribute" then re-directs to "deliver." Only the definitions of "deliver"—not "distribute"—include the fatal term "attempted." On the other hand, West Virginia's law defines the core crime in terms of "deliver" which is directly defined, without any leapfrogging, to include "attempted transfer." Thus, under Virginia and federal law, an attempted transfer is enough to satisfy the requirements of a completed act of distribution while under West Virginia law, the act of delivery is defined as an attempted transfer.

In the end, the statutory framework of all three jurisdictions (West Virginia as discussed in Campbell, federal law as discussed in Groves, and Virginia as discussed in this case) are nearly identical (see Appendix A). Yet, they have been accorded different interpretations: Campbell on the one hand; Groves and Ward on the other. First, Ward squarely held that one of the Virginia statutes in question was a proper predicate offense. But, in doing so, the Court did not consider the question of "attempt" offenses. Campbell

12

next ruled that inchoate offenses cannot be proper predicate convictions and found that a West Virginia statute, that is substantially similar to the Virginia statutes are issue here, included an inchoate offense. Finally, Groves looked to a federal statute with nearly the same statutory language as both West Virginia and Virginia's statutes and determined that the federal statute did not include an inchoate offense. The decision in Groves puts reconciliation of Campbell and Ward beyond the Court's capacity to reconcile.

And, it cannot be forgotten that, at the end of this statutory and legal maze, stands a convicted man. Despite the hairsbreadth of distance between the West Virginia and federal statutes, months, if not years, of a man's life are a stake.

Left with this tangle of cases and mindful of the weight of this decision, the Court finds that both of the proposed predicate offenses for Brown are "controlled substance offenses" and proper predicate offenses for a Career Offender Enhancement because the Virginia statutes are more similar to the federal statutory framework than the West Virginia statute.

In the alternative, it also is reasonable to read the decisions in Ward and Campbell to be in conflict that cannot be reconciled. And, it is the rule in this circuit that, where there are irreconcilable conflicting opinions on a point from the Court of Appeals, district courts are to follow the first decision. That

13

is because under established Fourth Circuit law, "one panel cannot overrule a decision issued by another panel." McMellon v. United States, 387 F.3d 329, 332 (4th Cir. 2004). And, the Fourth Circuit has "made it clear that, as to conflicts between panel opinions, application of the basic rule that one panel cannot overrule another requires a panel to follow the earlier of the conflicting opinions." Id. at 333. So if, as seems to be so, Campbell and Ward cannot reasonably be reconciled, it appears that, until the Fourth Circuit overturns Ward en banc or there is an intervening Supreme Court decision, Va. Code Ann. § 18.2-248 is a "controlled substance offense" under U.S.S.G. § 4B1.2(b). For that alternative reason, the objection must be overruled.

## CONCLUSION

For the foregoing reasons, DEFENDANT'S OBJECTION TO THE PRESENTENCE REPORT (ECF No. 29) was denied.

/s/ REP
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: June 22, 2023

14